## AMENDED CLASS ACTION SETTLEMENT AND RELEASE AGREEMENT

This Class Action Settlement and Release Agreement (the "Agreement") is made and entered into by and between Plaintiff and Settlement Class Representative Doris Jeffries ("Ms. Jeffries," "Settlement Class Representative," or "Plaintiff"), individually and on behalf of the Settlement Class Members (as defined herein), on the one hand, and Defendant Volume Services America, Inc. d/b/a Centerplate and Centerplate/NBSE ("Centerplate"), on the other hand.  Ms. Jeffries and Centerplate are referred to herein collectively as the "Parties" and individually as a "Party."

### Recitals

WHEREAS, on September 1, 2017, Ms. Jeffries, on behalf of herself and all other similarly situated individuals, filed a putative class action complaint against Centerplate in a case styled *Jeffries v. Volume Services America, Inc. d/b/a Centerplate and Centerplate/NBSE, et al.*, Case No. 1:17-cv-01788-CKK, in the United States District Court for the District of Columbia (the "Lawsuit").  In the Lawsuit, Ms. Jeffries alleged that Centerplate violated the Fair and Accurate Credit Transactions Act ("FACTA"), 15 U.S.C. § 1681c(g), by printing credit card receipts at the point of sale containing more than the last five digits of the customer's credit card number and the expiration date.

WHEREAS, Centerplate denies that it is liable for any violation of FACTA or any other law or duty and further denies that Ms. Jeffries or the class she seeks to represent is entitled to any form of damages or relief based on the conduct alleged in the Lawsuit.  Centerplate further maintains that it has meritorious defenses to all the claims alleged in the Lawsuit.  By entering into this Agreement, Centerplate does not admit any liability or wrongdoing of any kind or that any class can or should be certified, except for purposes of settlement.

1

EXHIBIT 1

WHEREAS, Ms. Jeffries and her counsel believe that the Lawsuit is meritorious and have considered the benefits to be obtained under this Agreement, the risks associated with the prosecution of this complex and potentially time-consuming litigation, and the likelihood of class certification and success on the merits.  Ms. Jeffries' counsel have investigated the facts and law relevant to the Lawsuit, have received informal discovery, and have conducted independent investigation and research.  Ms. Jeffries and her counsel have concluded that the settlement set forth in this Agreement is fair, adequate, reasonable, and in the best interests of the Settlement Class Members (as defined herein).

WHEREAS, the Parties enter into this Agreement to avoid the further expense, inconvenience, and distraction of burdensome and protracted litigation and to avoid the risks of litigation.  The Parties desire to settle the Lawsuit in its entirety, including all claims alleged in the Lawsuit by Ms. Jeffries on behalf of herself and the Settlement Class Members (as defined herein).

NOW, THEREFORE, in consideration of the mutual covenants, terms, and conditions set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree, subject to the Court's approval, as follows:

1.      **Certification of Settlement Class and Approval of Settlement**

1.1      As soon as practicable after this Agreement is executed, Ms. Jeffries shall move for an order preliminarily approving of the settlement embodied in this Agreement (the "Class Action Settlement") and provisionally certifying the following class for settlement purposes only:

> All individuals to whom, on September 5, 2015, Centerplate provided an electronically printed receipt at the point of sale or transaction at the D.C. Convention Center, on which receipt Centerplate printed the expiration date and/or more than the last 5 digits of the individual's credit card or debit card.

The foregoing class is referred to herein as the "Settlement Class" and the individuals who comprise the foregoing class are referred to herein collectively as the "Settlement Class Members." Excluded from the Settlement Class are all employees of Centerplate or its parents, subsidiaries or affiliates, all of Ms. Jeffries' attorneys and employees of Ms. Jeffries' attorneys, any judicial officer, or his/her immediate family, to which this case is or has been assigned, and persons who validly opt out of the settlement by following the procedures set forth herein.

      1.2     The motion for preliminary approval shall request that the Court: (a) preliminarily approve this Agreement as being the product of serious, informed, non-collusive negotiations, having no obvious deficiencies, not improperly granting preferential treatment to Ms. Jeffries or any Settlement Class Members, and falling within the range of possible final approval; (b) stay all proceedings in the Lawsuit until the Court renders a final decision on approval of the Class Action Settlement, provided, however, that during this time, Settlement Class Counsel will be entitled to seek reasonable discovery concerning identifying, transaction and credit/debit card information of potential Settlement Class Members, including such discovery referenced in Section 4, below; (c) appoint Ms. Jeffries as the Settlement Class Representative for settlement purposes only; (d) appoint Chant Yedalian of Chant & Company A Professional Law Corporation, Brian Herrington of Chhabra Gibbs & Herrington PLLC, and Katherine Van Dyck of Cuneo Gilbert & Laduca as Class Counsel for settlement purposes only ("Settlement Class Counsel"); and (e) set the date and time of the final approval hearing, which should not occur until at least 180 calendar days after the entry of the preliminary approval order. Settlement Class Counsel shall prepare initial drafts of the motion for preliminary approval and supporting documents and provide those drafts to Centerplate's counsel at least 10 calendar days before filing, and Centerplate shall have the option to join in the motion or file its own brief statement of non-opposition in support. The Parties agree

that the Court may make preliminary findings and enter an order certifying the Settlement Class subject to final findings, final approval of the Class Action Settlement, and entry of a Final Approval Order and Judgment.

1.3     As soon as practicable after the entry of the preliminary approval order, Settlement Class Counsel shall file their motion for final approval of the Class Action Settlement and entry of a Final Approval Order and Judgment and motion for an award of attorneys' fees, litigation costs, administration costs, and an enhancement award for Ms. Jeffries as the Settlement Class Representative.   The motion and all supporting papers shall be posted on a Settlement Website established by the Claims Administrator. Settlement Class Counsel shall state in their final approval motion papers the number  of all Settlement Class Members who validly and timely have excluded themselves from the Settlement Class.   Settlement Class Counsel shall prepare initial drafts of the motion for final approval and supporting documents and provide those drafts to Centerplate's counsel at least 10 calendar days before filing the same with the Court.   Centerplate shall either join in the motion or file its own brief statement of non-opposition in support.

1.4     The Parties shall take all necessary and reasonable steps to achieve certification of the Settlement Class, preliminary and final approval of the Class Action Settlement, and entry of a Final Approval Order and Judgment, including, without limitation, responding to objections, addressing any appeals or appellate issues, and obtaining any further orders from the Court as may be necessary.   The Parties shall execute and deliver any additional papers, documents and other assurances, and shall do any other acts reasonably necessary to perform their obligations under this Agreement to carry out the Agreement's expressed intent.   Upon the Final Approval Order and Judgment having become final, Ms. Jeffries' Complaint in the Lawsuit shall be amended by

operation of this Agreement to replace the purported class definition in the Complaint with the Settlement Class definition contained in Paragraph 1.1 of this Agreement.

1.5      Centerplate does not consent to certification of any class for any purpose other than effectuating this Class Action Settlement and disputes that any class should or could be certified for any other purpose.  If the Court does not approve the Class Action Settlement, either preliminarily or finally, or the Agreement otherwise terminates as provided herein: (a) this Agreement shall be automatically of no force or effect; (b) the Lawsuit will revert to the status that existed before the execution of this Agreement with no class yet certified, and any documents or information exchanged during the settlement discussions shall be returned, deleted, or destroyed at the option of the Party producing such documents; and (c) no term or draft of this Agreement, or any part or aspect of the Parties' settlement discussions, negotiations, or documentation (including, without limitation, any declarations and briefs filed in support of the motions for preliminary or final approval) will have any effect or be admissible into evidence for any purpose in the Lawsuit or any other proceeding.  If the Court proposes any material modifications of, or additions to, this Agreement or its exhibits, the Parties each agree to exercise their judgment in good faith to evaluate such proposed modifications, but shall have the right to agree to or reject any or all of them.  By way of non-exclusive examples, "material" modifications shall include, but not be limited to, any substantive modification of the terms of the Release in Section 8 below or any change in the amount that will be paid by Centerplate.

2.      **Settlement Payments and Procedures**

2.1      Centerplate agrees to fund a class action settlement in the total amount of $450,000.00 (the "Gross Settlement Funds").  No interest shall accrue on said sum, or any part thereof.  All notice and administration costs and expenses, any fees and expenses awarded to

Settlement Class Counsel, and any enhancement award to Ms. Jeffries shall be paid from the Gross Settlement Funds.  Within ten (10) business days of the date the Court enters the preliminary approval order, Centerplate shall deposit the Gross Settlement Funds with the Claims Administrator.  The Gross Settlement Funds, and any parts thereof, shall be deposited by the Claims Administrator into one or more FDIC-insured institutions in a segregated non-interest-bearing account or accounts to be opened and maintained by the Claims Administrator.  The Claims Administrator shall maintain those accounts and allow withdrawals from those accounts only if those withdrawals are consistent with the terms of this Agreement and any orders of the Court.  The Claims Administrator may use the deposited funds to cover the preparation and dissemination of the Settlement Class Notice and setting up the Settlement Website.  Under no circumstances, including in the event of an appeal or appeals, shall Centerplate be obligated to pay more than the Gross Settlement Funds set forth in this Agreement.  In the event the Final Approval Order and Judgment is not entered or does not become final, then the Claims Administrator shall return to Centerplate the amount of the Gross Settlement Fund but only after deducting all administration charges by the Claims Administrator and also deducting all notice costs.

2.2     Settlement Class Counsel shall have the right to make a motion for its reasonable attorneys' fees and costs to be paid from the Gross Settlement Funds.  Centerplate will not object to Settlement Class Counsel's motion for attorneys' fees and costs, so long as any award of attorneys' fees and costs would not require Centerplate to pay any amount over and above the Gross Settlement Funds.  Centerplate shall not be liable for any payment to Settlement Class Counsel other than an award of fees and costs to be paid out of the Gross Settlement Funds.  A reduction by the Court or by an appellate court of the fees and costs awarded to Settlement Class Counsel will not be considered a "material" modification of this Agreement and shall not affect

any of the Parties' rights and obligations under this Agreement, and shall only serve to reduce the amount of the fees and costs payable to Settlement Class Counsel from the Gross Settlement Funds.

2.3     Ms. Jeffries agrees not to seek an enhancement award of more than $5,000.00 as consideration for her efforts in prosecuting the Lawsuit to date and through entry of the Final Approval Order and Judgment.  Centerplate will not object to any request by Ms. Jeffries for an enhancement award so long as the request does not exceed the above amount.  Other than and in addition to the value of her individual claims as a Settlement Class Member, the amount ultimately ordered by the Court shall be the only consideration paid to Ms. Jeffries under this Agreement or in connection with the Lawsuit and shall be paid out of the Gross Settlement Funds.  Centerplate shall not otherwise be liable for any payment to Ms. Jeffries.  A reduction by the Court or by an appellate court of any enhancement award will not be considered a "material" modification of this Agreement and shall not affect any of the Parties' rights and obligations under this Agreement, and shall serve only to reduce the amount of the enhancement award payable to Ms. Jeffries.

2.4     The parties do not know the exact number of Settlement Class Members.  What the parties know is that there were a total of 240 credit/debit card transactions processed by the Centerplate point of sale terminal at the D.C. Convention Center on September 5, 2015.  Centerplate has provided Settlement Class Counsel with a declaration setting forth facts establishing that these were the only receipts printed by Centerplate that would have potentially violated FACTA.  The number of transactions in this case does not equate to the number of Settlement Class Members.  For example, Centerplate contends that not every person who made a credit/debit card purchase received a receipt.  Under FACTA, there is no cause of action if the consumer was not provided a receipt.  Thus, there may be persons who had one or more credit/debit

card transactions but they are not Settlement Class Members because they were not provided a customer receipt.  As another example, there may be persons who made more than one transaction using the same or different credit/debit cards.  Centerplate asserts that, under FACTA, there is a $1,000 maximum statutory damage cap that applies on a per consumer basis regardless of how many receipts the same person received from the merchant.  Thus, the point of these examples (and these examples are not the only things that can cause variance) is that the maximum class size cannot be greater than the 240 number of credit/debit transactions that took place on September 5, 2015, but the class size is in all likelihood less than 240.  Settlement Class Counsel has negotiated a settlement whereby each Settlement Class Member who submits a valid and timely claim ("Authorized Claimant") shall receive $1,000.  Hypothetically, if there were 240 Settlement Class Members (there cannot be a larger number since there were only 240 credit/debit transactions) and every single Settlement Class Member submitted a claim, then a total of $240,000 would be paid for class claims.  If this were to happen, then there would be $210,000 in remaining Gross Settlement Funds to pay for Notice and administrative costs, any enhancement award to Ms. Jeffries, and attorneys' fees and costs as awarded to Settlement Class Counsel.  If that were the case, the amount remaining to compensate for attorneys' fees after the deduction of Notice and administrative costs, any enhancement award to Ms. Jeffries, and costs incurred, would be less than the attorneys' lodestar in this case.  The parties do not expect such a hypothetical result. However, if such a result occurred, then, despite that FACTA's fee shifting provisions entitle Settlement Class Counsel to recover their lodestar, Settlement Class Counsel will agree to have their lodestar cut and sacrificed such that all Authorized Claimants receive $1,000 (the maximum statutory damages available under FACTA).

2.5     Settlement checks must be cashed, deposited, or negotiated by Authorized Claimants within 90 calendar days after the date of the check (the "Check Void Date"). In the event that any settlement checks remain uncashed, the value of the uncashed checks shall be paid to Legal Assistance for Seniors (https://www.lashicap.org/) (the "Cy Pres Beneficiary"), or as otherwise ordered by the Court.

2.6     If final approval is granted and not reversed by writ or appeal, Centerplate shall have no reversionary interest in any portion of the Gross Settlement Funds, and no portion of the Gross Settlement Funds shall revert to Centerplate.

2.7     In addition to payment of the Gross Settlement Funds, within thirty (30) days after the Court enters the preliminary approval order, Centerplate shall: (1) certify that its existing point of sale equipment is FACTA compliant; and (2) amend its standard operating procedures for employees who operate point of sale terminals to: (a) emphasize compliance with FACTA; and (b) include a written company FACTA policy which states that, with respect to any receipt provided to any customer that uses a credit or debit card to transact business with Centerplate, Centerplate will not print more than the last five digits of a customer's credit or debit card number, or the credit or debit card expiration date.

**3.     Claims Administration**

3.1     The Claims Administrator shall be Atticus Administration LLC, who the Parties have agreed will be responsible for the administration of the Class Action Settlement. As a condition for its appointment as Claims Administrator, Atticus Administration LLC shall agree to use any class member information provided by either Settlement Class Counsel or Centerplate solely to carry out its duties as Claims Administrator pursuant to this Agreement.

3.2     The Claims Administrator shall administer the process of: (a) providing notice to the Settlement Class Members as set forth herein; (b) receiving, processing, and paying claims; (c) paying Settlement Class Counsel's attorneys' fees and costs as awarded by the Court; (d) paying Ms. Jeffries' enhancement award as awarded by the Court; (e) opening and maintaining bank accounts and maintaining the Gross Settlement Funds and other settlement funds; (f) complying with all tax reporting obligations; (g) obtaining any necessary information from Settlement Class Counsel, Ms. Jeffries, and Authorized Claimants for tax reporting purposes; and (h) any other duties necessary to administer the Class Action Settlement and/or to which the Parties otherwise agree in writing.  The Claims Administrator shall ensure that the information it receives from the Parties and Settlement Class Members is secured and managed in such a way as to protect the security and confidentiality of the information from third parties.  The Claims Administrator shall disseminate the Settlement Class Notice as set forth in Section 4, below.  In addition, the Claims Administrator shall establish a website ("Settlement Website"), Facebook page, and Twitter page containing information regarding the Class Action Settlement.

3.3     No later than 15 calendar days before the filing date for Ms. Jeffries' motion for final approval of the Class Action Settlement, the Claims Administrator shall provide a declaration to Settlement Class Counsel and Centerplate's counsel confirming that the Claims Administrator provided the Settlement Class with notice in accordance with the Court's preliminary approval order, along with a list of all Settlement Class Members who submitted objections or timely and valid requests for exclusion.

**4.      Settlement Class Notice**

4.1     Settlement Class Counsel shall subpoena Heartland Payment Systems, Inc., American Express, and Discover to attempt to obtain a list of individuals who made a credit or

debit card purchase or purchases from Centerplate at the D.C. Convention Center on September 5, 2015, as well as identifying information for such individuals. This list of individuals shall be referred to as the Potential Class Member List, which shall be provided to the Claims Administrator, treated as confidential, and not disclosed to anyone.[1]

4.2    No later than 60 calendar days after entry of the Court's order preliminarily approving the Class Action Settlement, the Claims Administrator shall send to each of the persons on the Potential Class Member List a Settlement Class Notice and/or an Email Settlement Class Notice in the form approved by the Court, which shall provide notice of the terms of this Agreement, the procedure for and consequences of making a claim, objecting to, or opting-out of the Class Action Settlement, and the date of the final approval hearing.

4.3    To the extent the subpoenas referenced in Section 4.2 above yield neither a mailing address nor email address for any of the potential Settlement Class Members, then in addition to the notice identified above, additional notice will be made by one or both of the following methods: (1) a subpoena will be issued to obtain the email list of all subscribers to the Library of Congress' National Book Festival blog, and the Claims Administrator will provide email notice to all individuals identified; or (2) notice will be provided for a period not to exceed thirty (30) days on the websites festivalnet.com and/or upcomingcons.com, which are websites that regularly advertise festivals, conventions, and other events, including the National Book Festival.[2]

---

[1] The parties have explored and Centerplate has provided a declaration confirming that it does not have the name, postal mailing address, email address or facsimile number of any of the individuals who made a credit or debit card purchase or purchases from Centerplate at the D.C. Convention Center on September 5, 2015.

[2] The parties have explored and Centerplate has represented the following: The National Book Festival is open, without charge, to members of the public. With respect to members of the general public (other than presenters/vendors) who attended the event, there is no record that was implemented to track the identifying information (name, mailing address and/or email) of the attendees. In addition, Centerplate has represented that it does not have nor can it otherwise obtain

4.4     Unless otherwise required by the Court, nothing else shall be required of the Parties, Settlement Class Counsel, Centerplate's counsel, or the Claims Administrator to provide notice of the proposed settlement and the final approval hearing as described herein.

4.5     The Parties agree that the procedures for providing notice to the Settlement Class Members described herein fairly informs the Settlement Class Members of the nature of the litigation, the financial and other terms of the Agreement that are particularly significant for the Settlement Class Members, the procedure for and consequences of making a claim, opting-out, and objecting to this Agreement, and the date of the final approval hearing as set by the Court.

**5.     Submission of Claims**

5.1     For a Settlement Class Member to be compensated from the settlement, he or she must complete and timely submit a Claim Form verifying that he or she received a credit or debit card receipt from Centerplate at the D.C. Convention Center on September 5, 2015 and providing either a copy of the receipt or a copy of a credit or debit card statement showing a transaction from Centerplate at the D.C. Convention Center on September 5, 2015.  Claim forms must be postmarked no later than 90 days after the date notice is provided (the "Claim Period").  Unless otherwise ordered by the Court or agreed upon by the Parties, any completed Claim Form that is received by the Claims Administrator and postmarked after the end of the Claim Period shall not be accepted and processed.

5.2     The Settlement Class Members who submit timely and valid Claim Forms will be referred to as "Authorized Claimants."  Only Authorized Claimants will receive settlement compensation under this Agreement.  Authorized Claimants may only submit one claim and

---

any mail and/or email address of presenters and vendor participants at the 2015 National Book Festival.  Centerplate has provided a declaration setting forth these facts.

receive $1,000 regardless of the number of credit/debit card transactions they may have made from Centerplate at the D.C. Convention Center on September 5, 2015.

5.3     Any Claim Form that has been approved by the Claims Administrator shall be deemed valid and the Settlement Class Member shall be deemed an Authorized Claimant.

5.4     Any Settlement Class Member who fails to submit a timely and valid Claim Form or fails to submit in writing a timely request for exclusion shall automatically be deemed a Settlement Class Member whose rights and claims with respect to the issues raised in the Lawsuit will be finally adjudicated by the Court's order approving the Class Action Settlement and the Final Approval Order and Judgment.  Such Settlement Class Member's rights to pursue recovery from the settlement or otherwise will be extinguished.

**6.     Exclusion from the Settlement Class and Objections to the Class Action Settlement**

6.1     Settlement Class Members will have ninety (90) days after the date notice is provided to exclude themselves from the Settlement Class by sending a letter, by first class United States mail, to the Claims Administrator containing: (a) the title of the Lawsuit; (b) the full name, address, and telephone number of the person requesting exclusion; and (c) a statement that he or she requests exclusion from the Settlement Class.

6.2     Settlement Class Members who timely opt-out of the Class Action Settlement shall: (a) have no right to receive any benefits under the Class Action Settlement; (b) not be bound by the terms of the Class Action Settlement; and (c) have no right to object to the terms of the Class Action Settlement or be heard at the final fairness hearing.  Opt-out letters must be submitted individually and cannot be made on behalf of a group of Settlement Class Members.  Each letter must be signed by the Settlement Class Member who is opting out.  Any such opt-out request must be made in accordance with the terms set forth in this Agreement and the Settlement Class Notice

13

and will be timely only if postmarked no later than 90 calendar days after notice is provided (the "Exclusion Period"). The delivery date is deemed to be the date the request for exclusion is deposited in the U.S. Mail as evidenced by the postmark. No later than seven (7) calendar days after the end of the Exclusion Period, the Claims Administrator shall provide Settlement Class Counsel and Centerplate's counsel with a list of the Settlement Class Members who have validly opted out of the Settlement Class. The Settlement Administrator shall also determine whether there is any documentary proof in the form of either (1) transaction history from Heartland Payment Systems, Inc., American Express, or Discover showing a transaction from Centerplate at the D.C. Convention Center on September 5, 2015, (2) a copy of a receipt showing a transaction from Centerplate at the D.C. Convention Center on September 5, 2015, or (3) a copy of a credit or debit card statement showing a transaction from Centerplate at the D.C. Convention Center on September 5, 2015, and use such proof to determine, at its discretion, whether people from whom Opt-out letters are received are actual Settlement Class Members and, if so verified, such persons who opt-out shall be referred to as Verified Opt-Out Settlement Class Members.

6.3     Settlement Class Members cannot both object to and opt-out of the Class Action Settlement. Any Settlement Class Member who attempts to both object to and opt-out of the Class Action Settlement will be deemed to have opted out and will forfeit the right to object to the Class Action Settlement or any of its terms. If a Settlement Class Member returns both a valid and timely Claim Form and an opt-out request, the opt-out request shall be deemed void and of no force and effect, and the Claim Form shall be processed under the terms of this Agreement.

6.4     Notwithstanding anything else in this Agreement, if there are more than twenty (20) Verified Opt-Out Settlement Class Members who  opt-out, Centerplate shall have the unilateral option to terminate this Agreement at its sole discretion, and this Agreement shall be null and void

and of no force and effect.  If Centerplate so elects, it shall give notice of such termination in writing to Settlement Class Counsel no later than 10 days after receiving the list of Settlement Class Members who have requested exclusion from the Settlement Class.  If Centerplate terminates the Agreement under this Section, Centerplate shall be obligated to pay the Claims Administrator for all costs and expenses incurred by the Claims Administrator to that date for work performed in connection with this Agreement.

6.5     The motion for preliminary approval will request that the Court order that any objections to this Class Action Settlement must be submitted to the Claims Administrator no later than ninety (90) days after notice is provided.  Each objection to the Class Action Settlement must include: (a) a heading containing the name and case number of the Lawsuit; (b) the Settlement Class Member's name and postal address; (c) a statement as to the basis of the objector's belief that he or she is a member of the Settlement Class; (d) documentary proof in the form of either a copy of a receipt showing a transaction from Centerplate at the D.C. Convention Center on September 5, 2015, or a copy of a credit or debit card statement showing a transaction from Centerplate at the D.C. Convention Center on September 5, 2015; (e) a detailed statement of each objection, including, if available, the factual and legal basis for each objection; and (f) a statement of whether the Settlement Class Member intends to appear, either in person or through counsel, at the final approval hearing, and, if through counsel, a statement identifying the counsel's name, address, telephone number, and email address.

## 7.     Compensating Authorized Claimants

7.1     No later than 30 calendar days after a Final Approval Order and Judgment is entered by the Court, or as soon as reasonably practicable thereafter, the Claims Administrator shall distribute proceeds from the settlement to each Authorized Claimant by way of a settlement check.

No Authorized Claimant shall have any ownership right to the funds represented by the settlement check unless and until that settlement check is cashed, negotiated, or deposited.  The Claims Administrator will indicate on the check stub or check insert that the Authorized Claimant should consult his or her tax advisor regarding the tax consequences of the settlement payment.

7.2    After all authorized payments to the Claims Administrator, Authorized Claimants, Settlement Class Counsel, and Ms. Jeffries have been made as described herein, any remaining portion of the Gross Settlement Funds, shall be delivered by the Claims Administrator to the Cy Pres Beneficiary, if so provided in the Final Approval Order and Judgment, or if not so provided, otherwise distributed in accordance with the Final Approval Order and Judgment.

## 8.    Release

8.1    Upon the Final Approval Order and Judgment having become final, Ms. Jeffries and each Settlement Class Member, shall be deemed to have, and by operation of this Agreement and the Final Approval Order and Judgment, shall have fully, finally, irrevocably, and forever released Centerplate, and all of its past and present direct and indirect parents, affiliates and subsidiaries (whether or not wholly owned) and their respective directors, officers, employees, agents, insurers, shareholders, members, attorneys, advisors, consultants, representatives, partners, affiliates, related companies, joint ventures, divisions, predecessors, successors, and assigns of each of them (collectively, the "Released Parties") from any and all liabilities, claims, causes of action, damages (whether actual, compensatory, statutory, punitive or any other type), penalties, costs, attorneys' fees, losses, or demands, whether known or unknown, existing or suspected or unsuspected, that in any way arises out of or is based on Centerplate issuing a credit or debit card receipt at the D.C. Convention Center on September 5, 2015 which contains the expiration date and/or more than the last 5 digits of a credit card or debit card number.

8.2     Except for proceedings to enforce the terms of this Settlement Agreement, upon entry of the Final Approval Order and Judgment, Ms. Jeffries and each Settlement Class Member shall be deemed to have, and by operation of the Final Approval Order and Judgment shall have agreed not to file, maintain, cause or knowingly permit the filing or maintenance of any lawsuit, administrative action, or other proceeding in any state, federal or foreign court, or before any local, state, federal or foreign administrative agency, or any other tribunal, based on any of the Released Claims.

**9.     Retention of Jurisdiction**

9.1     The Court has jurisdiction over the subject matter of this lawsuit, the parties, and all members of the Settlement Class. The Parties agree that should the Court grant final approval of the Class Action Settlement and enter a Final Approval Order and Judgment, the Court shall retain jurisdiction over the Parties and all Settlement Class Members to enforce the terms of this Agreement and the Final Approval Order and Judgment. The Court's jurisdiction shall lapse three years after the final approval of the Settlement Agreement.

**10.    No Admission of Liability**

10.1    The Parties understand and acknowledge that this Agreement constitutes a compromise and settlement of disputed claims.  No action taken by the Parties, either previously or in connection with the negotiations or proceedings connected with this Agreement, shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made, an acknowledgement or admission by any party of any fault, liability, or wrongdoing of any kind whatsoever to any other party, or an acknowledgment or admission that the Lawsuit is appropriate for class treatment or any purpose other than this Agreement.

10.2     Neither this Agreement, nor any act performed or document executed under or in furtherance of this Agreement or the Class Action Settlement, is, may be deemed to be, or may be used as, an admission or evidence of the validity of any claim made by Ms. Jeffries, the Settlement Class Members, or Settlement Class Counsel.

## 11.     Preclusive Effect

11.1     This Agreement shall not be subject to collateral attack by any Settlement Class Member or any recipient of the Settlement Class Notice after the Final Approval Order and Judgment is entered.  Such prohibited collateral attacks shall include, but are not limited to, claims that the Settlement Class Member failed for any reason to receive timely notice of the procedure for submitting a Claim Form, or claims disputing the calculation of any Settlement Class Member's individual settlement amount.

11.2     Except as provided herein, neither this Agreement nor any of its terms shall be offered or used as evidence by the Parties, Settlement Class Members, or their respective counsel in the Lawsuit or in any other action or proceeding; provided, however, that nothing contained in this section shall prevent this Agreement from being used, offered, or received in evidence in any proceedings to enforce, construe, or finalize the Class Action Settlement and this Agreement, or from being used in defense of any claims released under this Agreement.

11.3     To the extent permitted by law, this Agreement may be pleaded as a full and complete defense to, and may be used as the basis for an injunction against, any action, suit, or other proceeding which may be instituted, prosecuted, or attempted in breach of this Agreement or to bring claims released under the Agreement.  Any of the Released Parties may file this Agreement and/or the Final Approval Order and Judgment in any action that may be brought against it in order to support a defense or counterclaim based on principles of *res judicata*,

collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim or issue preclusion or similar defense or counterclaim in any court, administrative agency, or other tribunal.

## 12.   Taxes

12.1   Any person or entity that receives a distribution from the Gross Settlement Funds shall be solely responsible for any taxes or tax-related expenses owed or incurred by that person or entity by reason of receipt of that distribution.  In no event shall Centerplate or any of the other Released Parties have any responsibility or liability for taxes or tax-related expenses arising in connection with the receipt of any portion of the Gross Settlement Funds to Ms. Jeffries, the Settlement Class Members, Settlement Class Counsel or any other person or entity.  Neither Centerplate, Ms. Jeffries, Settlement Class Counsel, nor Centerplate's counsel have made any representation about the tax consequences of this Agreement.

## 13.   Integration

13.1   This Agreement constitutes a single, integrated written contract expressing the entire agreement of the Parties relating to the subject matter hereof, and all prior or contemporaneous agreements, understandings, representations and statements, whether oral or written and whether by a Party or such Party's legal counsel, are merged herein.  No Party has relied on any covenants, agreements, representations, or warranties of any kind whatsoever other than those contained herein.  This Agreement may not be changed, altered, or modified except in writing and signed by all Parties, and may not be discharged except by performance in accordance with its terms or by a writing signed by all Parties.

13.2   Ms. Jeffries and Settlement Class Counsel acknowledge and agree that they have conducted an independent investigation of the facts and law relevant to the Lawsuit and that they

have received informal discovery and all other information from Centerplate necessary to make a fully informed decision whether to enter into this Agreement. The Parties agree that this Agreement, including without limitation the Release in Section 8 hereof, shall remain effective in all respects notwithstanding any later discovery of additional or different facts related to the Lawsuit.

**14.    Construction and Intent**

14.1    This Agreement is executed voluntarily by each of the Parties without any duress or undue influence on the part, or on behalf of, any of them. This Agreement has been negotiated at arms-length by parties of equal bargaining power, and drafted jointly by Settlement Class Counsel and Centerplate's counsel. Each of the Parties has had full opportunity to review and consider the contents of this Agreement, has read and fully understands the provisions of this Agreement, and has relied on the advice and representation of legal counsel of its own choosing. In the event that a dispute arises with respect to this Agreement, no Party shall assert that any other Party is the drafter of this Agreement or any part hereof, for purposes of resolving ambiguities that may be contained herein. If any provision of this Agreement shall be deemed ambiguous, that provision shall not be construed against any Party on the basis of the identity of the purported drafter of this Agreement or such provision hereof.

14.2    The Parties represent and agree that they have been advised to discuss this Agreement with an attorney, that they have carefully read and fully understand all provisions of this Agreement, that they are entering into this Agreement voluntarily and that they have the capacity to enter into this Agreement. Further, the Parties represent and acknowledge that, in executing this Agreement, they do not rely and have not relied upon any representation or

statement not set forth herein made by any of the Parties or any of the Parties' agents, representatives, or attorneys with regard to the subject matter, basis, or effect of this Agreement.

14.3    The various headings used in this Agreement are solely for the Parties' convenience and may not be used to interpret this Agreement.  The headings and formatting of the text in definitions do not define, limit, extend, or describe the Parties' intent or the scope of this Agreement.

## 15.    Governing Law

15.1    This Agreement shall be construed in accordance with, and be governed by, the law of Washington D.C., without regard to the principles thereof regarding choice of law.

## 16.    Cooperation

16.1    The Parties acknowledge that it is their intent to consummate this Agreement and agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of the Agreement and to exercise their best efforts to obtain preliminary and final approval from the Court including doing all things reasonably necessary to protect and support the Agreement if an appeal is taken or any other form of judicial review is sought.

## 17.    No Prior Assignments

17.1    The Parties hereto represent, covenant, and warrant that they have not, directly or indirectly, assigned, transferred, encumbered, or purported to assign, transfer, or encumber, to any person or entity any portion of any liability, claim, demand, action, cause of action or rights released and discharged by this Agreement.

## 18.    Binding on Successors and Assigns

18.1    This Settlement Agreement binds and benefits the Parties' respective successors, assigns, legatees, heirs, and personal representatives.

19.     **Nullification and Severability**

19.1     If any immaterial provision of this Agreement is declared by the Court to be invalid, void, or unenforceable, the remaining provisions of this Agreement will continue in full force and effect. If the Court declares invalid, void, or unenforceable a material provision of this Agreement, or orders a material provision of this Agreement to be changed, any Party may terminate the Agreement. The Party terminating the Agreement shall provide written notice to the other Party within five (5) business days of the Court's Order declaring such material provision invalid, void, or unenforceable. A Party that fails to provide such notice within the time prescribed, waives the right to terminate the Agreement based on the Court's Order.

19.2     In the event that for any reason final distribution of the settlement amounts described herein does not occur, the entire Gross Settlement Funds, less any costs and expenses incurred by the Claims Administrator for work performed in connection with this Agreement prior to the termination date, shall be returned to Centerplate with ten (10) business days.

20.     **Signatories**

20.1     Each person executing this Agreement in a representative capacity represents and warrants that she or he is empowered to do so.

20.2     This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, even though all Parties do not sign the same counterparts. The Agreement may be executed by facsimile, scanned, email or DocuSign signature.

IN WITNESS WHEREOF, the Parties or their duly authorized representatives execute this

Agreement effective as of the last date indicated below:


**Plaintiff/Settlement Class Representative Doris Jeffries:**

_____

Doris Jeffries

5/10/2022
_____

Date


**Defendant Volume Services America, Inc. d/b/a Centerplate and Centerplate/NBSE:**

By:_____

Title:_____

Date:_____




Approved as to form only:

**Settlement Class Counsel:**                    **Counsel for Centerplate:**


_____                    _____

Chant Yedalian                                Mark W. Bayer
Chant & Company A Professional Law Corp.      Barnes & Thornburg LLP


_____                    _____

Date                                          Date


_____

Brian Herrington
Chhabra Gibbs & Herrington PLLC


_____

Date

IN WITNESS WHEREOF, the Parties or their duly authorized representatives execute this

Agreement effective as of the last date indicated below:


**Plaintiff/Settlement Class Representative Doris Jeffries**:

_____

Doris Jeffries

_____

Date


**Defendant Volume Services America, Inc. d/b/a Centerplate and Centerplate/NBSE:**

By:_____

Title:_____

Date:_____




Approved as to form only:

**Settlement Class Counsel:**

_____

Chant Yedalian

Chant & Company A Professional Law Corp.

5/10/22
_____

Date

_____

Brian Herrington

Chhabra Gibbs & Herrington  PLLC

5-11-22
_____

Date

**Counsel for Centerplate:**

_____

Mark W. Bayer

Barnes & Thornburg LLP

_____

Date

23

IN WITNESS WHEREOF, the Parties or their duly authorized representatives execute this

Agreement effective as of the last date indicated below:


**Plaintiff/Settlement Class Representative Doris Jeffries:**

_____

Doris Jeffries

_____

Date


**Defendant Volume Services America, Inc. d/b/a Centerplate and Centerplate/NBSE:**

By: _____

Title: _CEO_____

Date: _5/10/22_____




Approved as to form only:

**Settlement Class Counsel:**                    **Counsel for Centerplate:**

_____      _____

Chant Yedalian                                    Mark W. Bayer
Chant & Company A Professional Law Corp.          Barnes & Thornburg LLP

_____      _____5/10/22_____

Date                                              Date

_____

Brian Herrington
Chhabra Gibbs & Herrington  PLLC

_____

Date

23