**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| DORIS JEFFRIES, on behalf of herself and all other similarly situated,<br><br>     Plaintiff,<br><br>v.<br><br>VOLUME SERVICES AMERICA, INC. (d/b/a Centerplate and Centerplate/NBSE): and DOES 1 THROUGH 10,<br><br>     Defendants. | Case No. 1:17-cv-01788 (CKK)<br><br>Hon. Colleen Kollar-Kotelly |

**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND STATEMENT OF POINTS OF LAW AND AUTHORITY IN SUPPPORT THEREOF**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................... iii

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS
    ACTION SETTLEMENT...............................................**Error! Bookmark not defined.**

STATEMENT OF POINTS OF LAW AND AUTHORITY ...................................... 2

    I.      INTRODUCTION ..................................................................... 2

    II.     FACTUAL SUMMARY ............................................................ 3

    III.    SETTLEMENT DISCUSSIONS ................................................ 4

    IV.   NOTICE HAS BEEN PROVIDED TO SETTLEMENT CLASS
          MEMBERS IN CONFORMITY WITH THIS COURT'S
          ORDERS AND, THUS FAR, NOT A SINGLE CLASS MEMBER
          HAS OPTED-OUT OR OBJECTED........................................... 5

          A.     Mailed Full Notice ....................................................... 5

          B.     Library of Congress Notice............................................ 6

          C.     Internet Notice ............................................................ 6

          D.     Declaration Concerning Compliance With Notice Plan ........... 6

          E.     No Opt-Outs................................................................ 7

          F.     No Objections .............................................................. 7

    V.     THE LACK OF ANY OPT-OUTS AND OBJECTIONS
          PROVIDES FURTHER SUPPORT FOR THE SETTLEMENT ............ 7

    VI.    THE SETTLEMENT ................................................................ 7

    VII.   THE CLASS .......................................................................... 11

          A.     Numerosity.................................................................. 12

          B.     Commonality............................................................... 13

          C.     Typicality ................................................................... 14

          D.     Adequacy ................................................................... 15

          E.     Rule 23(b)(3) Requirements Are Met ............................... 15

    VIII.  THE TWO-STEP APPROVAL PROCESS................................... 19

IX.    THE PRESUMPTION OF FAIRNESS ..................................................20

X.    THIS SETTLEMENT IS FAIR AND REASONABLE .......................................21

    A.    Risks of Continuing Litigation.................................................22

    B.    Substantial Benefits of Settlement Compared to Risks of Continued Litigation ....................................................................23

    C.    The Settlement Is The Product of Extensive Arm's-Length Negotiations ........................................................................24

XI.    VALID CLAIMS TO DATE ..................................................................24

XII.    CONCLUSION.....................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                             **Page(s)**

*Abels v. JBC Legal Group, P.C.,*
    227 F.R.D. 541 (N.D. Cal. 2005)……………………………………………………...16

*Amchem Products Inc. v. Woodward,*
    521 U.S. 591 (1997) ……………………………………………………….……19

*Armstrong v. Board of School Directors of the City of Milwaukee,*
    616 F.2d 305 (7th Cir.1980) ……………………………….……………………20

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,*
    222 F.3d 52 (2nd Cir. 2000)………………………………...…………………15

*Bateman v. American Multi-Cinema, Inc.*
    623 F.3d 708 (9th Cir. 2010) …………….……………………………………17, 23

*Cent. States SE. & SW. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.,*
    504 F.3d 229 (2nd Cir. 2007) ………………………………………………13

*Chalk v. T-Mobile USA, Inc.,*
    560 F.3d 1087 (9th Cir. 2009) …………………………………...…………18

*Craft v. County of San Bernardino,*
    624 F.Supp.2d 1113 (C.D. Cal. 2008) …………………………………………...24

*Damassia v. Duane Reade, Inc.,*
    250 F.R.D. 152 (S.D.N.Y. 2008) ……………………………………………...13

*Deposit Guar. Nat'l Bank v. Roper,*
    445 U.S. 326 (1980)………………………….………………………………18

*Eisen v. Carlisle & Jacquelin,*
    417 U.S. 156 (1974)………………………………………………….......18

*Elkins v. Equitable Life Ins. of Iowa,*
    1998 WL 133747 (M.D. Fla. 1998) ……………………………………………...19

*Hammon v. Barry,*
    752 F.Supp.1087 (D. D.C. 1990) ……………………………………………...21

*Hanlon v. Chrysler Corp.,*
    140 F.3d 1011 (9th Cir. 1998) ……………………...…………………………...........16

*In re Cendant Corp., Derivative Action Litigation,*
    232 F.Supp.2d 327 (D. N.J. 2002) ……………………………..……………….....24

*In re Heritage Bond Litigation,*
    2005 WL 1594403 (C.D. Cal. 2005)..……………………………………………......24

*In re Mego Fin. Corp. Sec. Litig.,*
    213 F.3d 454 (9th Cir. 2000) ………………………………………………………...5

*In re Portal Software, Inc. Sec. Litig.,*
    2007 WL 1991529 (N.D. Cal. 2007) …………………………………………………20

*In re Toys "R" Us–Delaware, Inc (FACTA) Litig.,*
    295 F.R.D. 438 (C.D. Cal. 2014) …………………………………..…..….……  24

*In re Vitamins Antitrust Litig.,*
    2001 WL 856292, *4 (D. D.C. 2001) …………………………………………………21

*Kesler v. Ikea U.S., Inc., et al.,*
    2008 WL 413268 (C.D. Cal. 2008)……………………………………………………14

*Lorazepam v. Mylan Labs., Inc.,*
    2003 WL 22037741 *6 (D. D.C. 2003) ………………………………………………21

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,*
    244 F.3d 1152 (9th Cir. 2001) ………………………………………………………...17

*Marisol A. v. Giuliani,*
    929 F. Supp. 662 (S.D.N.Y. 1996) …………………………………………………14

*Medrano v. WCG Holdings, Inc.,*
    2007 WL 4592113 (C.D. Cal. 2007)……………………………………………..…14

*Murray v. GMAC Mortgage Corp.,*
    434 F.3d 948 (7th Cir. 2006) ………...……………………………..……………...15, 18

*Nat'l Rural Telecomm. Coop. v. DirecTV,*
    221 F.R.D. 523 (C.D. Cal. 2004) ……………………………………………………21, 22

*Officers for Justice v. Civil Service Commission of City and County of San Francisco,*
    688 F.2d 615 (9th Cir. 1982) ………...…………………………………………………..22

*Penn. Pub. Sch. Emps. Ret. Sys. v. Morgan Stanley & Co.,*
    772 F.3d 111 (2nd Cir. 2014)…………...……………………………………………..13

*Phillips Petroleum Co. v. Shutts,*

472 U.S. 797 (1985)………………………………………………………………....18

*Robidoux v. Celani*,
     987 F.2d 931 (2nd Cir. 1993)……………………………...…………….…………13

*Strube v. American Equity Life Ins. Co.*,
     226 F.R.D. 688 (M.D. Fla. 2005) ……………………………………………..19

*Tchoboian v. Parking Concepts, Inc*,
     2009 WL 2169883 (C.D. Cal. 2009)……………………………………………14, 15

*Torrisi v. Tucson Elec. Power Co.*,
     8 F.3d 1370 (9th Cir. 1993) …………………………...…………………………22

*Wal-Mart Stores v. Visa U.S.A.*,
     396 F.3d 96 (2nd Cir. 2005)...…………………………………………..…………20

*Yokoyama v. Midland Nat'l*,
     594 F.3d 1087 (9th Cir. 2010)   …………………………………...……………17-18

*Zinser v. Accufix Research Institute, Inc.*,
     253 F.3d 1188 (9th Cir. 2001) …………………………………………………....16

**<u>Statutes</u>**

15 U.S.C. § 1681 *et seq.*, Fair Credit Reporting Act ("FCRA")………………………………3, 18

15 U.S.C. § 1681(c)(g), Fair and Accurate
Credit Transactions Act ("FACTA")……………………………………………….*passim*

15 U.S.C. § 1681n……………………………………………………………….4, 15, 18, 22

**<u>Federal Rules of Civil Procedure ("FRCP")</u>**

FRCP Rule 23(a)…………………………………………………………………………12

FRCP Rule 23(a)(1) …………………………...……………………………………………12

FRCP Rule 23(a)(2) …………………...………………………………………………13

FRCP Rule 23(a)(3) ………………………………………………………………....14

FRCP Rule 23(a)(4) …………………………………………………………...………15

FRCP Rule 23(b)(3)……………………………………………….....................12, 16-20

FRCP Rule 23(b)(3)(A), (B) (C) and (D)  ……………………………………………19

FRCP Rule 23(e)…………...………………………………………………………...……....20-22

**Other Authorities**

*Newberg on Class Actions*, 4th Ed. …………………………………………………………..20-21

Manual for Complex Litigation § 1.46, at 53-55 (West 1977) ………………………………..20

**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND STATEMENT OF POINTS OF LAW AND AUTHORITY IN SUPPPORT THEREOF**

Plaintiff Doris Jeffries, on behalf of herself and the proposed Settlement Class, hereby moves the Court, pursuant to Federal Rule of Civil Procedure 23, for an Order granting final approval of the proposed class action settlement on the terms and conditions set forth in the Amended Class Action Settlement And Release Agreement ("Settlement" or "Agreement"), a copy of which is on file with the Court as Dkt. 47-1.

Plaintiff further moves the Court for an Order:

1.　　　Confirming its previous findings that the requirements for class certification, for settlement purposes, are satisfied;

2.　　　Certifying the Settlement Class for settlement purposes;

3.　　　Appointing Plaintiff Doris Jeffries as the Class Representative for the Settlement Class;

4.　　　Appointing attorneys Chant Yedalian of Chant & Company A Professional Law Corporation and Brian K. Herrington of Chhabra Gibbs & Herrington PLLC as Class Counsel for the Settlement Class;

5.　　　Appointing Atticus Administration, LLC as the Settlement Administrator to administer the Settlement;

6.　　　Finding that the Settlement is fair, adequate, and reasonable and complies with Federal Rule of Civil Procedure 23.

7.　　　Finding that the notice of Settlement directed to the Settlement Class members has been completed in conformity with the Court's orders;

8.　　　Binding all Settlement Class members who did not timely exclude themselves from the Settlement, including the release contained in paragraph 8.1 of the Agreement;

1

9.     Directing the Parties and the Settlement Administrator to effectuate all terms of the Agreement;[1]

This Motion is based upon the Statement of Points of Law and Authority, *infra*, the Declarations, Exhibits, and other documents filed concurrently in support thereof, the papers and pleadings on file in this action, and upon such other and further evidence as the Court may adduce in ruling on this Motion.

## STATEMENT OF POINTS OF LAW AND AUTHORITY

### I.    INTRODUCTION

After extensive negotiations, Plaintiff Doris Jeffries ("Plaintiff" or "Class Representative") and Defendant Volume Services America, Inc. ("Centerplate" or "Defendant"), reached a proposed class-wide settlement of this lawsuit.

On May 4, 2022, the Court entered its Order [Dkt. 46] granting preliminary approval of the proposed class settlement but required the Parties to ensure that paragraph 9 of the proposed settlement agreement is amended such that the Court's jurisdiction shall lapse three years after the final approval of the Agreement. In the Order, the Court approved a plan of notice to be directed to Settlement Class members, set deadlines by which Settlement Class members may opt-out or object, and scheduled a final approval hearing to take place on October 17, 2022. Dkt. 46 at ¶¶ 8-14, 16.

Pursuant to the Court's Order, the Parties filed the amended settlement agreement on May 14, 2022. Dkt. 47-1.

As further explained below, notice has been completed in conformity with the Court's Order and to date not a single Settlement Class member has opted out or objected to the

---

[1] Plaintiff has filed a separate motion seeking attorneys' fees, costs, and a class representative service award. Dkt. 49.

proposed Settlement.

Plaintiff hereby respectfully moves the Court for an Order and Judgment granting final approval of the proposed class action settlement.

## II.    FACTUAL SUMMARY

On September 5, 2015, Defendant operated a point-of-sale ("POS") station at the National Book Festival held within the Walter E. Washington Convention Center ("D.C. Convention Center"). Dkt. 45-2, Porter Decl. ¶ 3. A total of 240 credit/debit card receipts were printed at the POS station on September 5, 2015. *Id.* at ¶ 4. However, unless a customer specifically requested a receipt, Centerplate's practice was to provide a receipt to a customer when the amount of the transaction was $25 or more. *Id.* at ¶ 5.

Plaintiff and members of the Settlement Class were all customers of Centerplate. Each made a purchase with Centerplate using the subject POS station on September 5, 2015, and each was provided a printed receipt that contained the full credit or debit number and expiration date for their respective cards. Dkt. 2-1, Complaint ¶¶ 3, 37, 38.

The Fair and Accurate Credit Transactions Act ("FACTA"), which is a subset of the Fair Credit Reporting Act ("FCRA"), provides that any merchant that accepts credit and/or debit cards is prohibited from printing on electronically printed receipts "more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction." 15 U.S.C. § 1681c(g)(1). A merchant who "willfully" fails to comply with FACTA is liable for (1) actual damages, if any, or statutory damages of not less than $100 and not more than $1,000, (2) punitive damages as may be awarded by the court, and (3) attorney's fees and costs. 15 U.S.C. § 1681n.

On September 1, 2017, Plaintiff filed her Class Action Complaint alleging willful violations of FACTA. Dkt. 2-1. Centerplate filed a motion to dismiss [Dkt. 9], which the Court

granted on August 3, 2018 [Dkt. 16 and 17]. Plaintiff successfully appealed the dismissal, and

the D.C. Circuit Court of Appeals reinstated the case through a published opinion issued July 2,

2019, *Jeffries v. Volume Services America, Inc.*, 928 F.3d 1059 (D.C. Cir. 2019). Centerplate

filed a petition for rehearing *en banc* that was denied by the D.C. Circuit on August 16, 2019. On

August 22, 2019, Centerplate filed a motion with the D.C. Circuit to stay its mandate. Plaintiff

opposed the motion, and the D.C. Circuit denied the motion on September 10, 2019.

## III.    SETTLEMENT DISCUSSIONS

Beginning in September 2019, counsel for the parties commenced settlement discussions.

These discussions led to an agreement to meet in person in Washington D.C. on October 28,

2019. The in-person meeting was attended by counsel for both parties, a client representative for

Centerplate, and Michael Porter, Vice President of Emerging Technologies for Centerplate. Dkt.

48-1, Yedalian Decl. ¶ 4. The settlement discussions continued until June 9, 2020, and various

proposals (oral and written) continued to be made and considered as part of the discussions

between Plaintiff and Centerplate. *Id*. During this time, underlying facts and information were

also exchanged between Plaintiff and Centerplate. *Id.*

The Agreement is a product of all of the extensive negotiations and exchanges between

the Parties, following the factual and legal investigation and research concerning the Parties'

respective claims and defenses. *Id.*[2]

---

[2]  "[I]n the context of class action settlements, 'formal discovery is not a necessary ticket to the
bargaining table' where the parties have sufficient information to make an informed decision
about settlement." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). *See
Rogers v. Lumina Solar, Inc.*, No. 18-cv-2128 (KBJ), 2020 U.S. Dist. LEXIS 108259, at *27
(D.D.C. June 19, 2020) (citing with approval *Alvarez v. Keystone Plus Constr. Corp.*, 303 F.R.D.
152, 164 (D.D.C. 2014) (crediting counsel's representations that the parties "have engaged in
significant informal discovery . . . and that this discovery has been sufficient to give them a
reasonably accurate assessment of the case" in assessing whether a proposed class settlement
was fair, reasonable, and adequate)).

IV.    **NOTICE HAS BEEN PROVIDED TO SETTLEMENT CLASS MEMBERS IN CONFORMITY WITH THIS COURT'S ORDERS AND, THUS FAR, NOT A SINGLE CLASS MEMBER HAS OPTED-OUT OR OBJECTED**

Here, Centerplate does not have the name, postal mailing address, email address or facsimile number for any of the of absent Settlement Class members. Dkt. 45-2, Porter Decl. ¶ 7.

Thus, pursuant to the Court-approved notice plan, notice was to be provided to Settlement Class members in the following ways:

A.    **Mailed Full Notice**

Plaintiff subpoenaed Global Payments Inc. as successor to Heartland Payment Systems, Inc. ("Heartland"), American Express Company Inc. and American Express Travel Related Services Company Inc. (collectively "American Express"), and Discover Financial Services to attempt to obtain a list of individuals, as well as their identifying information, who made a credit or debit card purchase or purchases from Centerplate at the D.C. Convention Center on September 5, 2015. Plaintiff's counsel had numerous discussions with counsel for each subpoenaed party and, ultimately, resolved each subpoena.

Heartland had no responsive information for the subject time period. Hodges Decl. ¶¶ 2-3, attached as Ex. 7 to the Herrington Decl. at Dkt. 45-3.

American Express[3] produced a declaration and accompanying exhibit identifying sixteen potential class members. Costello Decl. ¶¶ 4, Ex. 9 at *id.* (accompanying exhibit redacted to prevent disclosure of class members' information).

Discover produced a declaration and accompanying exhibit identifying four potential class members. Chacko Decl. ¶ 3, Ex. 11 at *id.* (accompanying exhibit redacted to prevent

---

[3] American Express Company Inc. and American Express Travel Related Services Company Inc. share the same subpoena response unit.

disclosure of class members' information).

This list of individuals identified in the subpoena responses from American Express and Discovery are referred to as the Potential Class Member List, which were provided to the Claims Administrator, who in turn attempted to send to each of the persons on the Potential Class Member List a Settlement Class Notice and/or an Email Settlement Class notice.

The Claims Administrator attempted to send by U.S. postal mail the Full Notice to all individuals on the Potential Class Member List for whom mailing addresses are known.

**B.    Library of Congress Notice**

Plaintiff subpoenaed the Library of Congress ("LOC") to obtain an email list of all subscribers to the LOC's National Book Festival blog. After negotiations, Plaintiff and the LOC agreed to the following notice: LOC will make a single blog post on its National Book Festival blog. Then, it will use the email-to-blog-subscriber function to repeat the notice (and link it to the blog post) so that it is received 6 times in 90 days, linking to the same blog post, during the required time period. Plaintiff's counsel was advised by counsel for the LOC that this notice was effectuated. Dkt. 45-3, Herrington Decl. ¶¶ 5-6.

**C.    Internet Notice**

For a period of 30 days, notice was to be provided on the websites festivalnet.com and upcomingcons.com, which are websites that regularly advertise festivals, conventions, and other events, including the National Book Festival. Dkt. 47-1, Agreement ¶¶ 4.1-4.3. In addition, the Claims Administrator was to establish a website ("Settlement Website"), Facebook page, and Twitter page containing information regarding the Settlement. *Id.* ¶ 3.2.

**D.    Declaration Concerning Compliance With Notice Plan**

Filed concurrently with this Motion is the Declaration Of Bryn Bridley of Atticus Administration, LLC Re Dissemination Of Class Notice And Administration Of The Settlement.

Dkt. 48-2. The Declaration establishes that notice to the Settlement Class has been provided in conformity with the Court-approved notice plan.

**E.    No Opt-Outs**

Settlement Class members were provided a 90-day opt-out period, until September 29, 2022, to exclude themselves from the settlement ("Opt-Out Deadline"). Dkt. 46 at ¶ 10; Dkt. 48-2, Bridley Decl. ¶ 12. To date, no Settlement Class member has opted-out during the opt-out period. Dkt. 48-2, Bridley Decl. ¶ 12.

**F.    No Objections**

Settlement Class members were provided a 90-day period, until September 29, 2022, to object to the terms of the Settlement. Dkt. 46 at ¶ 11; Dkt. 48-2, Bridley Decl. ¶ 12. To date, no Settlement Class member objected to the Settlement. Dkt. 48-2, Bridley Decl. ¶ 12.

**V.    THE LACK OF ANY OPT-OUTS OR OBJECTIONS PROVIDES FURTHER SUPPORT FOR THE SETTLEMENT**

The lack of any opt-outs or objections provides further support for the Settlement. "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036, 1043 (N.D. Cal. 2008) (quoting *Nat'l Rural Telecomms. Coop. v. DirecTV*, 221 F.R.D. 523, 529 (C.D. Cal. 2004)). "The absence of a single objection to the Proposed Settlement provides further support for final approval of the Proposed Settlement." *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 529.

**VI.    THE SETTLEMENT**

Subject to the Court's approval, pursuant to Federal Rule of Civil Procedure 23(e), the Parties have agreed to settle this matter upon the terms and conditions set forth in the Agreement. A summary of the terms of the Agreement is as follows:

- This Settlement concerns the printed-paper credit and debit card customer receipts that were issued by Centerplate on September 5, 2015 at the D.C. Convention Center. Dkt. 45-2, Porter Decl. ¶ 4; Dkt. 47-1, Agreement ¶ 1.1.

- For the purposes of the Settlement, Plaintiff and Centerplate have stipulated to the certification of the following Settlement Class: All individuals to whom, on September 5, 2015, Centerplate provided an electronically printed receipt at the point of sale or transaction at the D.C. Convention Center, on which receipt Centerplate printed the expiration date and/or more than the last 5 digits of the individual's credit card or debit card. Dkt. 47-1, Agreement ¶ 1.1.

- Centerplate agrees to fund the class action settlement in the total amount of $450,000.00 (the "Gross Settlement Funds"). Payments to all Settlement Class members who submit a valid and timely Claim Form, all notice and administration costs and expenses, any fees and costs awarded to Class Counsel, and any service award to Plaintiff shall be paid from the Gross Settlement Funds. Dkt. 47-1, Agreement ¶ 2.1.

- The Settlement allows each Settlement Class member to submit one claim for $1,000.00. Dkt. 47-1, Agreement ¶ 2.4. In the event that any settlement checks remain uncashed, the value of the uncashed checks shall be paid to Legal Assistance for Seniors (https://www.lashicap.org/) (the "Cy Pres Beneficiary"). Dkt. 47-1, Agreement ¶ 2.5.

- A valid claim will require that a Settlement Class member produce evidence that he or she received a credit or debit card customer receipt from Centerplate at the D.C. Convention Center on September 5, 2015. Proof of claim may consist of the original or a copy of either a credit or debit card receipt or credit or debit card statement showing a transaction with Centerplate at the D.C. Convention Center on September 5, 2015. Dkt. 47-1, Agreement ¶¶ 5.1-5.3.

8

- As part of the Settlement, within thirty (30) days after the Court enters the preliminary approval order, Centerplate shall also: (1) certify that its existing point of sale equipment is FACTA compliant; and (2) amend its standard operating procedures for employees who operate point of sale terminals to: (a) emphasize compliance with FACTA; and (b) include a written company FACTA policy which states that, with respect to any receipt provided to any customer that uses a credit or debit card to transact business with Centerplate, Centerplate will not print more than the last five digits of a customer's credit or debit card number, or the credit or debit card expiration date. Dkt. 47-1, Agreement ¶ 2.7.

- The Parties agreed upon and the Court approved the notice plan set forth in section IV., above. As also explained in Section IV., above, Settlement Class members were provided until September 29, 2022 to opt-out of or object to the Settlement, and no Settlement Class member has thus far opted-out or objected during this period.

- The Settlement, including the claims process, will be administered, by Atticus Administration, LLC, subject to the Court's approval. Dkt. 47-1, Agreement ¶ 3.1.

- Class Counsel will apply to the Court for an incentive (service) award of up to $5,000 for the named Plaintiff, to be paid from the Gross Settlement Funds, to compensate Plaintiff for her services as the Class Representative. Dkt. 47-1, Agreement ¶ 2.3.

- The parties do not know the exact number of Settlement Class members. What the parties know is that there were a total of 240 credit/debit card transactions processed by the Centerplate point of sale terminal at the D.C. Convention Center on September 5, 2015. Centerplate has provided Class Counsel with a declaration setting forth facts establishing that these were the only receipts printed by Centerplate that would have potentially violated FACTA. The number of transactions in this case does not equate to the number of Settlement Class

members. For example, Centerplate contends that not every person who made a credit/debit card purchase received a receipt. Under FACTA, there is no cause of action if the consumer was not provided a receipt. Thus, there may be persons who had one or more credit/debit card transaction, but they are not Class members because they were not provided a customer receipt. As another example, there may be persons who made more than one transaction using the same or different credit/debit cards. Centerplate asserts that, under FACTA, there is a $1,000 maximum statutory damage cap that applies on a per consumer basis regardless of how many receipts the same person received from the merchant. Thus, the point of these examples is that the maximum class size cannot be greater than the 240 number of credit/debit transactions that took place on September 5, 2015, but the class size is in all likelihood less than 240, yet, as discussed below, sufficient to satisfy Rule 23's numerosity requirement Class Counsel has negotiated a settlement whereby each Settlement Class member who submits a valid and timely claim shall receive $1,000. Hypothetically, if there were 240 Class members (there cannot be a larger number since there were only 240 credit/debit transactions) and every single Class member submitted a valid and timely claim, then a total of $240,000 would be paid for class claims. If this were to happen, then there would be $210,000 in remaining Gross Settlement Funds to pay for notice and administrative costs, any service award to Plaintiff, and attorneys' fees and costs as awarded to Class Counsel. If that were the case, the amount remaining to compensate for attorneys' fees after the deduction of notice and administrative costs, any service award to Plaintiff, and costs incurred, would be less than the attorneys' lodestar in this case. The parties do not expect such a hypothetical result. However, if such a result occurred, then, despite that FACTA's fee shifting provisions entitle Class Counsel to recover their lodestar, Class Counsel will agree to have their lodestar cut and sacrificed such that all Class members receive

$1,000 (the maximum statutory damages available under FACTA). Alternatively, if there are less than 240 Class members who submit a valid and timely claim, after subtracting from the Gross Settlement Funds payments to Settlement Class members who submit a valid and timely claim, all notice and administration costs and expenses, and any service award to Plaintiff, then Class Counsel may seek up to the full amount of $450,000.00 (the "Gross Settlement Funds") as the attorneys' fees and costs awarded to Class Counsel. Despite expensive discovery and other efforts, Class Counsel expect that there will be few Settlement Class members who submit a valid and timely claim. The fees and costs would pay Class Counsel for investigating the facts, prosecuting the lawsuit including, but not limited to, the successful appeal, negotiating the Settlement, causing Centerplate to change its receipt printing processes and implementing new written policies and procedures concerning FACTA, and implementing the Settlement. Dkt. 45-2, Porter Decl. ¶¶ 3-8; Dkt. 47-1, Agreement ¶ 2.4.

- Class Counsel's motion for an award of attorneys' fees, costs, and the Class Representative's motion for service (or incentive) award will be posted on the Settlement Website. Dkt. 47-1, Agreement ¶ 1.3.

## VII.    THE CLASS

For the purposes of the Settlement, Plaintiff and Centerplate have stipulated to the certification of the following Settlement Class:

> All individuals to whom, on September 5, 2015, Centerplate provided an electronically printed receipt at the point of sale or transaction at the D.C. Convention Center, on which receipt Centerplate printed the expiration date and/or more than the last 5 digits of the individual's credit card or debit card.

Excluded from the Class are all employees of Centerplate or its parents, subsidiaries, or affiliates, all of Plaintiff's attorneys and employees of Plaintiff's attorneys, any judicial officer, or his/her immediate family, to which this case is or has been assigned, and persons who validly

11

opt out of the Settlement. Dkt. 47-1, Agreement ¶ 1.1.

In reviewing a class action settlement, "[t]he Court begins its analysis by addressing class certification." *Abraha v. Colonial Parking, Inc.*, Civil Action No. 16-680 (CKK), 2020 U.S. Dist. LEXIS 136538, at *9 (D.D.C. July 31, 2020) (citing *Radosti v. Envision EMI, LLC*, 717 F. Supp. 2d 37, 51 (D.D.C. 2010). "A class may be certified only if it meets all of the prerequisites in Rule 23(a) and at least one requirement in Rule 23(b). *Abraha*, 2020 U.S. Dist. LEXIS 136538, at *9 (citing *Ross v. Lockheed Martin Corp.*, 267 F. Supp. 3d 174, 190 (D.D.C. 2017)). This action meets the FRCP Rule 23(a) and FRCP Rule 23(b)(3) standards for certification.

### A.    Numerosity

Under FRCP Rule 23(a)(1), a class action may be maintained where "the class is so numerous that joinder of all members is impracticable."

"Courts have not required evidence of exact class size or identity of class members to satisfy the numerosity requirement." *Robidoux v. Celani*, 987 F.2d 931, 935 (2nd Cir. 1993). Rather, the practicability of joinder depends on the circumstances surrounding a case, including such considerations as judicial economy arising from the avoidance of a multiplicity of actions and geographic dispersion of class members. *Id.* at 936. "Numerosity is presumed for classes larger than forty members." *Penn. Pub. Sch. Emps. Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2nd Cir. 2014).

Here, the 240 credit and debit card customer transactions [Dkt. 45-2, Porter Decl. ¶ 4] demonstrate that the number of class members surpasses the larger than 40 figure that presumptively satisfies the numerosity requirement. The fact that, by the very nature of the Settlement Class, its members are unknown and cannot be readily identified, further dictates that joinder is impracticable. *Penn. Pub. Sch. Emps. Ret. Sys.*, 772 F.3d at 120. Additionally, the fact that statutory damages cannot exceed a range of $100-$1,000 demonstrates that few class

members would have the financial resources to prosecute such claims given that the expense of litigation would likely far outweigh the statutory damages they may recover. *Id.*

### B.    Commonality

FRCP Rule 23(a)(2) requires that there be "questions of law or fact common to the class." "The commonality requirement is met if plaintiffs' grievances share a common question of law or of fact." *Cent. States SE. & SW. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2nd Cir. 2007) "Commonality does not mean that all issues must be identical as to each member, but it does require that plaintiffs identify some unifying thread among the members' claims that warrants class treatment." *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 156 (S.D.N.Y. 2008) (quotation marks and alterations omitted).

All Settlement Class members share two common legal questions – whether Centerplate violated FACTA by printing more than the last 5 digits and expiration date of debit and credit cards on receipts, and whether its practice of doing so was "willful." None of the relevant questions relates to the conduct of the class members, but rather all focus on Centerplate's conduct and culpability in violating FACTA. See, *e.g.*, *Tchoboian v. Parking Concepts, Inc.*, 2009 WL 2169883 *5 (C.D. Cal. 2009), petition for permission to appeal grant of certification denied October 20, 2009, 9th Cir. Docket No. 09-80132 ("The overriding legal issue is whether [defendant']s alleged noncompliance was willful so that the class members are entitled to statutory damages. Moreover, whether [defendant] violated FACTA is a combined question of law and fact common to all members."); *Medrano v. WCG Holdings, Inc.*, 2007 WL 4592113 *2 (C.D. Cal. 2007) ("There is a common core of salient facts across the class. Each member of the proposed class received a non-compliant receipt from [Defendant] after the applicable compliance deadline."); *Kesler v. Ikea U.S., Inc., et al.*, 2008 WL 413268 *3 (C.D. Cal. 2008) ("In this case, the facts and legal issues of each class member's claim are nearly, if not entirely,

13

identical. There is a common core of salient facts across the class. Each member of the proposed

class received a non-compliant receipt from IKEA after the December 4, 2006 FACTA

compliance deadline. The overriding legal issue is whether IKEA's noncompliance was willful,

so that the class members are entitled to statutory damages.")

### C.   Typicality

FRCP Rule 23(a)(3) requires that the representative plaintiff have claims "typical of the

claims ... of the class." Typicality is satisfied where "'the claims of the named plaintiffs arise

from the same practice or course of conduct that gives rise to the claims of the proposed class

members." *Marisol A. v. Giuliani*, 929 F. Supp. 662, 691 (S.D.N.Y. 1996). Further, "[t]here is no

requirement that the factual basis for the claims of all members of a purported class be identical."

*Id.*

Here, Plaintiff and all other Settlement Class members allege the same injury, violation

of their FACTA rights resulting from the same course of conduct – the printing of more than the

last 5 digits and expiration date of their card number on credit or debit card receipts.

Accordingly, this lawsuit is based on conduct that is not unique to Plaintiff, but on standardized,

uniform conduct that is common to all Settlement Class members. Moreover, the same relief,

specifically, statutory damages under 15 U.S.C. § 1681n, is sought for all Settlement Class

members for Centerplate's "willful" violation of FACTA. Accordingly, the typicality

requirement is satisfied. *Tchoboian*, 2009 WL 2169883 *5 (C.D. Cal. 2009) (holding that

typicality is satisfied because "[Plaintiff]'s claim is, in fact, 'substantially identical' to the claims

of the proposed class members-namely, he alleges that [defendant] issued him a noncompliant

receipt in willful violation of the FACTA"); *Medrano*, 2007 WL 4592113 *3 (same); *Kesler*,

2008 WL 413268 *4 (same); *Murray v. GMAC Mortgage Corp.*, 2007 WL 1100608 *5 (N.D. Ill.

2007) ("Murray II") (typicality satisfied where, despite minor factual discrepancies, all putative

class members had "the same essential characteristics").

### D.    Adequacy

FRCP Rule 23(a)(4) requires that "the representative parties will fairly and adequately

protect the interests of the class." "[A]dequacy of representation entails inquiry as to whether: 1)

plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's

attorneys are qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson,*

*Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2nd Cir. 2000).

Here, there are no conflicts of interest between Plaintiff and Settlement Class members.

Plaintiff and each Settlement Class member assert identical claims for statutory damages arising

from the same facts, *i.e.*, Centerplate's printing of more than the last 5 digits and expiration date

of the respective credit or debit card on receipts. Thus, there is no potential for conflicting

interests in this action. *Abels v. JBC Legal Group, P.C.*, 227 F.R.D. 541, 545 (N.D. Cal. 2005)

(no conflict where claims asserted by plaintiff and class members arise from defendants' use of

form letters allegedly violating the Fair Debt Collection Practices Act). Moreover, there is no

basis for asserting against Plaintiff any unique defenses that Centerplate could not assert against

any other Settlement Class member. Nor is there any basis to suggest that Plaintiff lacks

sufficient zeal or competence.

Nor are there any conflicts with Plaintiff's counsel. Plaintiff is represented by highly

capable and competent counsel experienced in class action litigation, including FACTA lawsuits.

Dkt. 48-1, Yedalian Decl. ¶¶ 23-43. Dkt. 48-3, Herrington Decl. ¶¶ 3-4.

### E.    FRCP Rule 23(b)(3) Requirements Are Met

Plaintiff and Centerplate seek certification pursuant to FRCP Rule 23(b)(3), which

authorizes certification if "the court finds that the questions of law or fact common to class

members predominate over any questions affecting only individual members, and that a class

action is superior to other available methods for fairly and efficiently adjudicating the controversy." FRCP Rule 23(b)(3)'s predominance and superiority factors are satisfied.

### 1.  Common Questions Predominate

To satisfy predominance, common questions of law or fact must "present a significant aspect of the case" and be capable of resolution "in a single adjudication." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022-1023 (9th Cir. 1998). Central to this question "is the notion that the adjudication of common issues will help achieve judicial economy." *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1188, 1189 (9th Cir. 2001).

In this case, whether Centerplate violated FACTA "willfully" is the central issue that clearly predominates over any individual issues. Whether it did so depend upon facts concerning its own conduct — conduct that applies uniformly to all class members in this case.

That common issues predominate is also bolstered by the fact that the available remedy in this case is statutory damages. As explained in the FACTA case of *Bateman v. American Multi-Cinema, Inc.*, 623 F.3d 708, 719 (9th Cir. 2010), "Irrespective of whether Bateman and all the potential class members can demonstrate actual harm resulting from a willful violation, they are entitled to statutory damages."

That common issues predominate is also evidenced by the fact that all Settlement Class members' claims involve the very same conduct by Centerplate—the printing of receipts which contain more than the last 5 digits and expiration date of the credit or debit card.

### 2.  Superiority

To determine whether the superiority requirements of FRCP Rule 23(b)(3) are satisfied, a court must compare a class action with alternative methods for adjudicating the parties' claims. Lack of a viable alternative to a class action necessarily means that a class action satisfies the superiority requirement. "[I]f a comparable evaluation of other procedures reveals no other

realistic possibilities, [the] superiority portion of Rule 23(b)(3) has been satisfied." *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001) *Culinary/Bartender Trust Fund*, 244 F.3d at 1163.

Here, unless Settlement Class members can show actual harm, they can recover, at most, statutory damages in an amount between $100 and $1,000 per violation. As in *Culinary/Bartender Trust Fund*, "This case involves multiple claims for relatively small individual sums…. If plaintiffs cannot proceed as a class, some-perhaps most — will be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to recover. 'Class actions ... may permit the plaintiffs to pool claims which would be uneconomical to litigate individually.'" *Id*. at 1163; see also *Hanlon*, 150 F.3d at 1023 (explaining that "In this sense, the proposed class action is paradigmatic"); *Yokoyama v. Midland Nat'l*, 594 F.3d 1087, 1094 (9th Cir. 2010); ($10,000-$15,000 not sufficient incentive to sue individually); *Chalk v. T-Mobile USA, Inc.*, 560 F.3d 1087, 1095 (9th Cir. 2009) ("policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights"). In *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 953 (7th Cir. 2006), a case involving the *identical* remedy provisions of the FCRA[4], the Seventh Circuit held as follows: "Rule 23(b)(3) was designed for situations such as this, in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate."

The Supreme Court has similarly held. *Phillips Petroleum Co., v. Shutts*, 472 U.S. 797, 809 (1985) ("this lawsuit involves claims averaging about $100 per plaintiff; most of the

---

[4] "FACTA and other provisions of the FCRA [the Fair Credit Reporting Act] share the same statutory damages provision, see 15 U.S.C. § 1681n." *Bateman, supra*, 623 F.3d at 715.

plaintiffs would have no realistic day in court if a class action were not available"); *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338 n.9 (1980) ("damages claimed by the two named plaintiffs totaled $1,006.00. Such plaintiffs would be unlikely to obtain legal redress…. This, of course, is a central concept of Rule 23"); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 161 (1974) ("No competent attorney would undertake this complex antitrust action to recover so inconsequential an amount. Economic reality dictates that petitioner's suit [involving individual damage of $70] proceed as a class action or not at all").

In sum, as explained in another FACTA case, the purpose of Rule 23(b)(3) is "to allow integration of numerous small individual claims into a single powerful unit." *Bateman*, 623 F.3d at 722. The above authorities clearly dictate that the superiority requirements of FRCP Rule 23(b)(3) are satisfied here.

Consideration of the factors listed in FRCP Rule 23(b)(3) bolsters this conclusion. Ordinarily, these factors are (A) the interest of class members in individually controlling the prosecution of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by other class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action. However, when a court reviews a class action settlement, the fourth factor does not apply. In deciding whether to certify a settlement class action, a district court "need not inquire whether the case, if tried, would present intractable management problems." *Amchem Products Inc. v. Woodward*, 521 U.S. 591, 620 (1997). The remaining factors set forth in FRCP Rule 23(b)(3)(A), (B) and (C) all favor class certification in this case.

First, Settlement Class members have no particular interest in individually controlling the

prosecution of separate actions. Statutory damages cannot exceed $1,000, and the fact of the matter is that there is no other known separate action filed or prosecuted by any other class members. Moreover, any Settlement Class member who desires to pursue actual damages could either seek them through the terms of this Settlement or opt-out of the Settlement.

Second, and as explained above, the parties are not aware of any other litigation regarding the FACTA violations at issue in this case.

Third, it is desirable to concentrate the litigation in this forum because all of the alleged FACTA violations occurred within this district. Moreover, Plaintiff and Centerplate have reached a Settlement. "With the settlement in hand, the desirability of concentrating the litigation in one forum is obvious." *Elkins v. Equitable Life Ins. of Iowa*, 1998 WL 133747 *19 (M.D. Fla. 1998); *Strube v. American Equity Life Ins. Co.*, 226 F.R.D. 688, 697 (M.D. Fla. 2005) (third and fourth Rule 23(b)(3) factors are "conceptually irrelevant in the context of a settlement").

The conclusion is inescapable that there simply is no better method than a class action for resolving all the claims of the Class Members in this case.

Finally, FACTA is a consumer protection statute which serves not just to compensate, but also to "deter" future violations. *Bateman*, 623 F.3d at 718. This "deterrent purpose" of FACTA is served by certification: "we are quite sure that certification of a class here would preserve, if not amplify, the deterrent effect of FACTA." *Id.* at 723.

## VIII.   THE TWO-STEP APPROVAL PROCESS

There is a "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores v. Visa U.S.A.*, 396 F.3d 96, 116 (2nd Cir. 2005).

A settlement of class litigation must be reviewed and approved by the Court. FRCP Rule 23(e). This is done in two steps: (1) an early (preliminary) review by the trial court, and (2) a final review after notice has been distributed to the class members for their comment or

objections. This Motion concerns the first step.

"The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is 'within the range of possible approval.'" *Armstrong v. Board of School Directors of the City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980) (quoting Manual for Complex Litigation § 1.46, at 53-55 (West 1977)). The purpose of this hearing is "to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Id.* "[I]f the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing.'" *In re Portal Software, Inc. Sec. Litig.*, 2007 WL 1991529 at * 5 (N.D. Cal. 2007) (quoting Manual for Complex Litigation, Second § 30.44 (1985)); accord *In re Vitamins Antitrust Litig.* ("*Vitamins I*"), 2001 WL 856292, *4 (D. D.C. 2001).

At the second step of the approval process (usually referred to as the fairness hearing or final approval hearing), after class members have been notified of the proposed settlement and have had an opportunity to be heard, the court makes a final determination whether the settlement is "fair, reasonable and adequate" under Rule 23(e). *Armstrong*, 616 F.2d at 314.

This Court previously granted preliminary approval and the present motion seeks final approval of the Settlement.

## IX.    THE PRESUMPTION OF FAIRNESS

Courts presume the absence of fraud or collusion in the negotiation of a settlement unless evidence to the contrary is offered. In short, there is a presumption that the negotiations were conducted in good faith. *Newberg*, § 11:51, *Wal-Mart Stores*, 396 F.3d at 116 (2nd Cir.

2005). Courts do not substitute their judgment for that of the proponents, particularly where, as here, settlement has been reached with the participation of experienced counsel familiar with the litigation. *Hammon v. Barry*, 752 F.Supp.1087, 1093 (D. D.C. 1990).

While the recommendations of counsel proposing the settlement are not conclusive, the Court should take them into account and afford them "great weight," particularly where, as here, they are capable and competent, have experience with this type of matter, and have been intimately involved in this litigation. *Nat'l Rural Telecomm. Coop. v. DirecTV*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. [citation.] This is because '[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation.'"); *See also Newberg*, § 11:47; *Lorazepam v. Mylan Labs., Inc.*, 2003 WL 22037741 *6 (D. D.C. 2003) (stating the opinion of experienced counsel "should be afforded substantial consideration by a court in evaluating the reasonableness of a proposed settlement").

## X.    THIS SETTLEMENT IS FAIR AND REASONABLE

The Settlement is well within the range of reasonableness and final approval should be granted. No single criterion determines whether a class action settlement meets the requirements of FRCP Rule 23(e). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Service Commission of City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). Indeed, "one factor alone may prove determinative in finding sufficient grounds for court approval." *Nat'l Rural Telecomm. Coop. v. DirecTV*, 221 F.R.D. 523, 525 (C.D. Cal. 2004); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993), *cert. denied*, 512

U.S. 1220 (1994).

Some of the factors which were considered in evaluating the reasonableness of this Settlement are as follows:

### A.    Risks of Continuing Litigation

Absent this Settlement, there are very real risks involved in continued litigation, including extensive delays, potential appeals, and the possibility that Settlement Class members may ultimately end up with no recovery. Dkt. 48-1, Yedalian Decl. ¶ 5.

### 1.    "Willfulness"

In order to recover any statutory damages and other remedies under 15 U.S.C. § 1681n, Plaintiff must show that Centerplate engaged in "willful" conduct. However, Centerplate has vigorously denied that its conduct was willful. Dkt. 48-1, Yedalian Decl. ¶ 7. In contrast, Plaintiff believes, among other things, that the printing of more than the last 5 digits and expiration date of credit and debit cards was reckless and obvious to Centerplate and the result of a lack of adequate measures to safeguard consumer rights. *Id.*

Regardless of how strongly the Parties feel about the merits, the Parties face issues and risks concerning how the legal requirements for a "willful" violation of FACTA will be applied to the particular facts of this case. *Id.* at ¶ 8.

### 2.    Class Certification

The Parties have sharply divergent positions on class certification in this case, absent a settlement. Centerplate has denied that for any purpose other than that of settling this lawsuit, this action is appropriate for class treatment. *Id.* at ¶ 9.

Plaintiff believes that cases such as the decision in *Bateman v. American Multi-Cinema, Inc.*, 623 F.3d 708 (9th Cir. 2010), which reversed the denial of class certification in another FACTA case, strongly supports certification in this case. *Id.* at ¶ 10.

Yet, absent a settlement, class certification remains a hotly contested matter in this case, and there are risks attendant in continued litigation of these issues, including, at a minimum, delays, and potential appeals. *Id.* at ¶ 11.

### B.    Substantial Benefits of Settlement Compared to Risks of Continued Litigation

The Settlement provides for substantial benefits. *Id.* at ¶ 15.

Each Settlement Class member may make a claim in an amount of $1,000. Not only is this amount reasonable, it is the full amount of statutory damages available if the class were to proceed and succeed at trial. *Id.* at ¶ 16.

"The proposed settlement is not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators." *Officers for Justice*, *supra*, 688 F.2d at 625. Moreover, as long as the Settlement is reasonable, it does not matter that under the best-case scenario, the potential value of the case may be much higher. *In re Cendant Corp., Derivative Action Litigation*, 232 F.Supp.2d 327, 336 (D. N.J. 2002) (approving settlement which provided less than 2% value compared to maximum possible recovery); *In re Heritage Bond Litigation*, 2005 WL 1594403 *27-28 (C.D. Cal. 2005) (median amounts recovered in settlement of shareholder class actions were between 2% - 3% of possible damages).

The cash benefits are also reasonable when compared to the value of similar benefits in other FACTA cases. For example, in *In re Toys "R" Us–Delaware, Inc.—Fair And Accurate Credit Transactions Act (FACTA) Litigation*, No. cv–08–01980 MMM (FMOx), 295 F.R.D. 438, 447 (C.D. Cal. January 17, 2014), the Court found that the benefit of vouchers having a maximum combined value of $30.00 was reasonable in a case alleging nationwide FACTA violations against a much larger corporate defendant.

Another benefit of this lawsuit and Settlement is the fact that, as part of the Settlement,

Centerplate shall also: (1) certify that its existing point of sale equipment is FACTA compliant; and (2) amend its standard operating procedures for employees who operate point of sale terminals to: (a) emphasize compliance with FACTA; and (b) include a written company FACTA policy which states that, with respect to any receipt provided to any customer that uses a credit or debit card to transact business with Centerplate, Centerplate will not print more than the last five digits of a customer's credit or debit card number, or the credit or debit card expiration date. Dkt. 47-1, Agreement ¶ 2.7. These procedures and the FACTA compliance policy ensures that Centerplate will not continue to violate the law, willfully, inadvertently, or otherwise. Dkt. 48-1, Yedalian Decl. ¶ 17.

Such non-pecuniary benefits are properly considered in judging the results of the lawsuit. *See*, *e.g.*, *Craft v. County of San Bernardino*, 624 F.Supp.2d 1113, 1121, (C.D. Cal. 2008) (taking into account fact that, in addition to monetary aspects, the defendant stopped the practices at issue). This is especially true with a consumer protection statute such as FACTA which serves both a compensatory and "deterrent purpose." *Bateman*, 623 F.3d at 718. "In fashioning FACTA, Congress aimed to 'restrict the amount of information available to identity thieves.'" *Id.* The non-pecuniary benefits achieve that substantial purpose.

### C.    The Settlement Is The Product of Extensive Arm's-Length Negotiations

As discussed above, the Settlement is the product of extensive, adversarial, arm's-length discussions, negotiations, correspondence, factual and legal investigation and research, and careful evaluation of the respective parties' strengths and weaknesses. Dkt. 48-1, Yedalian Decl. ¶¶ 18-22.

## XI.    VALID CLAIMS TO DATE

As explained in Section VI., above, there were a total of 240 credit/debit card transactions processed by the Centerplate point of sale terminal at the D.C. Convention Center on

24

September 5, 2015. As was also explained above, this means that the number of class members is less than 240.

To date there have been a total of 26 valid claims determined by the Claims Administrator. Dkt. 48-2, Bridley Decl. ¶ 14. This means that the valid claims rate is *at least* 10.83%, which is a high and successful claims rate. In a study of consumer class action response rates by the Federal Trade Commission ("FTC"), the study found that even in instances where postcard or email notice is feasible because class members' mailing or email addresses are known, the response rates are respectively 6% (postcard) and 3% (email) with each such type of direct notice.[5]

Here, despite that direct notice was *not* possible for most Settlement Class members, Class Counsel's and the Claims Administrator's efforts at an effective notice plan yielded a better claims rate than what is usually possible.

## XII.    CONCLUSION

The proposed class action Settlement is well within the range of reasonable settlements. It is non-collusive, and it was achieved as the result of informed, extensive, and arm's-length negotiations conducted by experienced counsel. Plaintiff respectfully requests that the Court grant final approval of the proposed settlement.

Dated: September 16, 2022.                        Respectfully submitted,

                                                  */s/ Brian K. Herrington*
                                                  Brian K. Herrington (admitted *pro hac vice*)
                                                  CHHABRA GIBBS & HERRINGTON PLLC
                                                  120 North Congress Street, Suite 200
                                                  Jackson, MS 39021
                                                  T: 601.326.0820
                                                  E: bherrington@nationalclasslawyers.com

---

[5] https://www.ftc.gov/system/files/documents/reports/consumers-class-actions-retrospective-analysis-settlement-campaigns/class_action_fairness_report_0.pdf at 11 (last visited on September 13, 2022).

25

Chant Yedalian (admitted *pro hac vice*)
CHANT & COMPANY
A Professional Law Corporation
709 Alexander Ln
Rockwall, TX 75087
T: 877.574.7100
E: chant@chant.mobi.com

Charles J. LaDuca
D.C. Bar No. 476134
CUNEO GILBERT & LADUCA
4725 Wisconsin Avenue NW, Suite 200
Washington, DC 20016
T: 202.789.3960
E: charles@cuneolaw.com

*Attorneys for Plaintiff*

26